**FOR PUBLICATION**

FILED & ENTERED

JAN 23 2020

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY egonzale DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>Dennis Berkovich<br>Marina Voloshin<br><br><br>Debtor(s).<br><br>California Franchise Tax Board<br><br>Plaintiff(s),<br>v.<br><br>Dennis Berkovich<br><br><br>Defendant(s). | CHAPTER 13<br><br>Case No.:  1:12-bk-17302-MT<br>Adv No:   1:19-ap-01007-MT<br><br><br><br><br><br>**MEMORANDUM OF DECISION RE: THE CALIFORNIA FRANCHISE TAX BOARD'S MOTION FOR SUMMARY JUDGMENT** |

    Dennis Berkovich ("Debtor") filed a chapter 13 bankruptcy petition in 2012. Nearly ten years before Debtor received a discharge, the Internal Revenue Service ("IRS") had assessed additional federal income taxes for the 2003, 2004, and 2005 tax years. In 2008, the IRS assessed an additional $51,366 in federal income tax against Debtor related to the 2003 tax year, $16,811 in federal income tax related to the 2004 tax year, and an additional $77,026 in federal income tax against Debtor related to the 2005 tax year.

-1-

Debtor did not report these changes or corrections to the Franchise Tax Board ("FTB") and did not concede the accuracy of the IRS determination or state wherein it was erroneous. The IRS reported Debtor's additional federal income tax assessments to the FTB.

About a year after the IRS assessments, in June 2009, the FTB mailed a notice of proposed assessment to Debtor stating that it proposed to assess additional taxes of $13,850 for the 2003 tax year and $5,333 for the 2004 tax year plus penalties and interest based on the changes and corrections to Debtor's 2003 and 2004 federal income tax assessment. In August 2009, the FTB mailed another notice to Debtor proposing to assess additional taxes of $26,139 plus penalties and interest for the 2005 tax year. As of January 15, 2019, the amount of tax and interest on tax owed to the FTB was $18,021.76, $9,869.07, and $42,525 for the 2003, 2004, and 2005 tax years, respectively. Debtor has not paid the taxes.

Debtor's Chapter 13 plan provided for the FTB's general unsecured claims by stating that they would be paid pro rata with other Class 5 or general unsecured claims. The plan said nothing more about these claims. The FTB then filed claims for the 2003, 2004, and 2005 tax years. The Chapter 13 plan was confirmed on December 14, 2012. In 2018, Debtor received a discharge under 11 U.S.C. § 1328(a), having completed all required plan payments.

The FTB filed a complaint in 2019 claiming that Debtor's 2003, 2004, and 2005 tax year debts are nondischargeable under 11 U.S.C. § 523(a)(1)(B)(i). The FTB has now filed a motion for summary judgment ("Motion") supported by a declaration and a stipulation between the FTB and Debtor. Debtor opposes the Motion. As the parties have submitted a joint stipulation of facts, there are no disputes of material fact to resolve on this Motion.

A court grants summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c) (incorporated by Fed. R. Bankr. P. 7056). The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The court must view the evidence in the light most favorable to the nonmoving party. Bell v. Cameron Meadows Land Co., 669 F.2d 1278, 1284 (9th Cir. 1982).

Under 11 U.S.C. § 523(a)(1)(B), a discharge under 11 U.S.C. § 1328(a) does not discharge any debt for a "tax…(B) with respect to which a return, or equivalent report or notice, if required – (i) was not filed or given; or (ii) was filed or given after the date on which such return, report, or notice was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition." The question of whether Debtor complied with this requirement determines whether he may receive a discharge of his FTB liabilities.

California Revenue and Taxation Code ("RTC") § 18622(a) requires a taxpayer to "*report each change or correction*…within six months after the date of each final federal determination of the change or correction…*and* [to] concede the accuracy of the determination or state wherein it is erroneous." California Code of Regulations title 18, § 19059 further provides that section 18622 "requires that a taxpayer report certain specified federal changes. Such notification shall be made by mailing to the Franchise Tax Board…the original or copy of the final determination or renegotiation agreement as well as any other data upon which such final determination or renegotiation agreement is claimed."

<u>Effect of Debtor or IRS Filing the Report</u>

It is undisputed that Debtor did not personally report to the FTB the changes or corrections to his federal taxes for the 2003, 2004, and 2005 tax years as assessed by the IRS. [*See* Stipulation of Facts]. The FTB argues that debtor did not comply with RTC § 18622, making the additional tax liability nondischargeable. Debtor argues that the report sent by the IRS to the FTB suffices under § 523(a)(1)(B), making the debts dischargeable. The Ninth Circuit has not ruled on the question of whether a debtor's failure to file an "equivalent report or notice" required by RTC § 18622(a) makes the tax liability nondischargeable under §523(a)(1)(B)(i). The sole Circuit level decision on the issue is <u>Maryland v. Ciotti (In re Ciotti)</u>, 638 F.3d 276(4th Cir. 2011).

In <u>Ciotti</u>, a taxpayer filed federal and Maryland state income tax returns. Two years later, the IRS issued a determination letter that adjusted the taxpayer's federal tax returns, significantly increasing the taxpayer's federal adjusted income. Inasmuch as Maryland taxable income is based on federal adjusted income, the taxpayer was required under Maryland Tax Code § 13-409(b) to report the changes to her federal adjusted income to Maryland tax authorities and explain any errors that she believed the IRS made. The taxpayer did not report the changes to Maryland tax authorities, although the IRS forwarded the determination letter to the Maryland comptroller. Based on the information provided by the IRS, the comptroller adjusted the taxpayer's state returns, which resulted in higher taxes, penalties, and interest. <u>Id.</u> at 278.

The issue before the Fourth Circuit in <u>Ciotti</u> was whether a failure to file a report under Maryland's § 13-409(b) made a tax debt nondischargeable under § 523(a)(1)(B). <u>Id.</u>. Congress amended § 523(a)(1)(B) in 2005 when it enacted the Bankruptcy Abuse and Prevention Act. <u>Id.</u> at 279. <u>Ciotti</u> found that in amending § 523(a)(1)(B), Congress intended to make tax debts nondischargeable if a party either fails to file or give (1) a required return or (2) a required equivalent report or notice. <u>Id.</u> at 279-80. <u>Ciotti</u> discussed how the report required by the Maryland statute is similar to a tax return and concluded that the report required by the Maryland statute was an "equivalent report or notice," to which Congress intended to apply the non-dischargeability provisions of § 523(a)(1)(B). <u>Id.</u> at 280-81.

<u>Ciotti</u> explicitly discussed whether the IRS reporting to Maryland tax authorities the amount of a taxpayer's federal tax liability satisfied the requirements of § 523(a)(1)(B). The Maryland reporting requirement at issue read as follows:

> Within 90 days after the [IRS] issues to a person the final determination [increasing federal taxable income], *the person shall submit* to the tax collector a report of federal adjustment that includes:
>
> (1) a statement of the amount of the increase; and
>
> (2) if the person contends that the final federal determination is erroneous, an explanation of the reasons for the contention.

In re Ciotti, 638 F.3d at 281. (citing Md. Code Tax-Gen. § 13-409(b) (emphasis added)).

After determining that Maryland law requires the taxpayer to be the one to submit the report, Ciotti determined that the IRS reporting the information to state tax authorities does not satisfy the taxpayer's statutory obligation to report the information herself, Id. at 281, making the debt nondischargeable.

As with the Maryland reporting requirement, RTC § 18622(a) provides that "taxpayer *shall* report each change or correction… and *shall* concede the accuracy of the determination or state wherein it is erroneous." The plain meaning of RTC § 18622(a) is that the taxpayer must be the one to file the report. As in Ciotti, the reporting requirement is not met by the transmission of a report from the IRS.

Collier on Bankruptcy also supports such a reading of § 523(a)(1)(B), stating: "The reference to the failure to provide 'notice' means that if a debtor is obligated under nonbankruptcy law to file an amended return or give notice to a governmental unit of an amendment or correction to a prior filed federal tax return, the failure to do so will render nondischargeable any corresponding tax liability to the governmental unit." 4 Collier on Bankruptcy ¶ 523.07[3][a] (16th ed. 2019); See also Stapley v. California (In re Stapley) 609 B.R. 209, 226 (Bankr. N.D. Cal. 2019)(finding Ciotti persuasive); United States v. Martin (In re Martin), 542 B.R. 479 (9th Cir. BAP 2015)(finding that § 523(a)(1)(B) excepts discharge of tax debt where taxpayer did not file a return)

Debtor argues that the court should not follow the reasoning of Ciotti because a statutory interpretation of the Bankruptcy and Internal Revenue Codes and the plain meaning of § 523(a)(1)(B) reveals that he is not required to personally file the return required by RTC § 18622(a) and that a "return" filed by the IRS suffices.  Debtor relies on Ridgway v. United States (In re Ridgway), 322 B.R. 19 (Bankr. D. Conn. 2005) and Toibb v. Radloff, 501 U.S. 157 (1991)(explaining that the plain statutory language of the Bankruptcy and Internal Revenue Codes is the appropriate starting point of statutory construction).

In Ridgway, the debtor did not file his tax returns, and the IRS prepared a substituted return under 26 U.S.C. § 6020(b), assessing tax liabilities against the debtor. 322 B.R. at 20-21. The debtor eventually filed chapter 7.  Id. at 21.  The court found that the IRS' creation of the substitute returns under 26 U.S.C. § 6020 (1991) constituted a tax return filing that satisfied § 523(a)(1)(B).  Id. at 37. Because "return" was not defined by the Bankruptcy Code, the court found that a substitute return could be considered a return. After a survey of legislative history, Ridgway concluded that passive failure to file a return was not the type of deliberate misconduct Congress intended to make

nondischargeable. 322 B.R. at 33-34. The court found that the non-personal language of § 523(a)(1)(B) admitted to the possibility of a return filed by an entity other than Debtor. Id. at 36.

First, Ridgeway does not address required "reports or notices" under § 523(a)(1)(B) because it addresses solely returns. Here, the FTB's argument is that Debtor did not file or give a required equivalent report to the FTB. More importantly, the hanging paragraph of the 2005 version of § 523(a) now provides that returns prepared by the IRS under 26 U.S.C. § 6020(b) do not qualify as returns under 11 U.S.C. § 523(a)(1)(B). Congress specifically rejected Ridgeway's interpretation when it amended the hanging paragraph to read:

> For purposes of this subsection, the term "return" means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements). Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986 [26 USCS § 6020(a)], or similar State or local law, or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal, *but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986* [26 USCS § 6020(b)], *or a similar State or local law.*

If § 6020(b) can no longer provide an equivalent return, the IRS filing the changes or corrections to Debtor's federal tax assessment with the FTB would likewise not be equivalent to Debtor filing the corrections with the FTB. Debtor's reliance on Ridgeway does not change the court's conclusion that Ciotti is a correct interpretation of the current statutory language.

Debtor correctly points out that exceptions to discharge should be narrowly construed in favor of the debtor to serve the Bankruptcy Code's purpose of giving debtors a fresh start. State of California Franchise Tax Board v. Jerauld, 208 B.R. 183, 189 (9th Cir. BAP 1997) *see also* Jafarpour v. Shahrokhi (In re Shahrokhi), 266 B.R. 702, 707 (8th Cir. 1997). The language of the statute allows no other reasonable conclusion based on the undisputed facts, so even construing the exception narrowly would still result in a denial of discharge.

Whether Debtor's Filing of the Original Return Excuses His Failure to File A Subsequent Report

Debtor further argues that the court should distinguish between when the debtor does not file a return at all and when the debtor files an insufficient return and the IRS files the required report. While Debtor's argument is not entirely clear, it appears that he relies on a number of cases either decided before the 2005 amendment or dealing with late filed returns. See Rhodes v. United States (In re Rhodes), 498 B.R. 357 (Bankr. N.D. Georgia 2013). In Rhodes, the issue was whether the debtor filed a return within the meaning of § 523(a)(1)(B) when he filed his tax returns after the due date and after a final IRS assessment. Id. at 358. Rhodes found that the definition of return did not contain a timeliness element so there was an issue of material fact whether the

returns qualified as "returns" under the hanging paragraph that followed § 523 (a)(19). Id. at 365.

In Rhodes, the debtor did file the tax returns, albeit quite late. The court distinguished this situation and emphasized that where the debtor filed nothing, reliance on the IRS' filing was no longer permitted, explaining the history of the various cases and Congress' attempt to require the debtor to actually file the tax return. Rhodes, 498 B.R. at 363. As Congress amended the statute to reverse the line of cases permitting the debtor to rely on the IRS filing a return to receive a discharge, it is not clear why Congress would allow an opposite result with "reports," both of which are obligations of the taxpayer. Debtor's reliance on Rhodes does not help his cause.

While the Ninth Circuit has not ruled on the question of "reports" under § 523(a)(1)(B), the court has indicated a tendency to follow the intended tightening of the requirements for debtors to comply with tax laws in order to receive a discharge of tax debts. In Smith v. United States (In re Smith), 828 F. 3d 1094 (9th Cir. 2016), the Ninth Circuit rejected the argument that a tax return filed seven years late and three years after the IRS already issued an assessment satisfied the requirement of § 523(a)(1)(B), citing to the 2005 amendment to the Bankruptcy Code and Ciotti.

Debtor also cites Jerauld for the proposition that a debtor's failure to report to the FTB a change in the debtor's federal taxes does not constitute a failure to file a required return under § 523(a)(1)(B)(i). In Jerauld, a debtor filed tax returns with the IRS and the FTB. The IRS reassessed the debtor's taxes and notified the FTB of the reassessment. Id. at 184. The debtor did not notify the FTB of the IRS reassessment. Id. The FTB then assessed additional taxes against the debtor. Id. at 185. Later, the debtor filed chapter 7 and received a discharge. Id.

The sole issue for the Ninth Circuit in Jerauld was whether the debtor's failure to notify the FTB of the reassessment as required by former RTC § 18451 was a failure to file a tax return under the 1994 version of 11 U.S.C. § 523(a)(1)(B)(i). Id. at 186. RTC § 18451, which has now been repealed, provided that "If the amount of gross income or deductions for any year of any taxpayer as returned to the United States Treasury Department is changed or corrected by the Commissioner of the Internal Revenue Service…such taxpayer *shall report such change or correction*…within 90 days after the final determination of such change or correction…or as required by the Franchise Tax Board…" Id. at 186 (citing Cal. Rev. & Tax Code § 18451 (West 1993)(repealed 1994); *see* Cal. Rev. & Tax Code § 18622 (West 1996)).

The Ninth Circuit held that although RTC § 18451 required the debtor to file a report of the reassessment, this requirement was not the equivalent of being required to file a tax return. Jerauld, 208 B.R. at 189. Because the former version of § 523(a)(1)(B)(i) made tax debts nondischargeable only if the debtor fails to file a required tax return and did not yet include requirements pertaining to filing or giving a required equivalent report or notice, the Ninth Circuit found that the debtor did not fail to file an amended tax return. Id.

Jerauld was decided before Congress enacted the 2005 amendment of § 523(a)(1)(B), which expands nondischargeability of tax debts where the debtor fails to file or give an "equivalent report or notice." Even if Debtor's failure to file a report with the FTB of the changes in his federal taxes is not a failure to file a return, under the current version of § 523(a)(1)(B), Debtor's tax debts may still be nondischargeable because he did not file or give an *equivalent report or notice* to the FTB. As explained in Ciotti, Congress revised § 523(a)(1)(B)(i) to effectively overrule the Jerauld line of cases. Ciotti, 638 F 3d at 279.

Here, the IRS's final determination related to Debtor's 2003 and 2004 tax assessment was May 12, 2008. The final determination to Debtor's 2005 tax assessment was April 14, 2008. Debtor never reported the changes to his 2003, 2004, and 2005 federal income taxes to the FTB. Although the IRS eventually provided the FTB this information, it does not satisfy Debtor's obligation under RTC § 18622(a) to file the report himself with the FTB. The fact that he filed tax returns years before the IRS assessments does not excuse him from this later requirement. Congress amended the statute to require both a return and any subsequent required report and revised it at the same time to emphasize the debtor's individual duty. While Debtor's argument for more leniency where he complied with some of his duties is appealing, his statutory interpretation does not square with Congress' intent to prohibit discharge of tax debts where a debtor has not been forthcoming in providing all information himself to the taxing authorities.

*The Effect of Plan Confirmation*

Debtor also argues in his responses to interrogatories that confirmation of his Chapter 13 plan bound the FTB to receiving solely the amount provided for in the plan. Although the res judicata effect of a plan can in rare instances modify a creditor's rights even where there is no valid legal basis for doing so, the plan must do so explicitly and observe all due process considerations. County of Ventura v. Brawders, 325 B.R. 405, 407 (9th Cir. BAP 2005), *aff'd*, 503 F.3d 856 (9th Cir 2007). Where a plan precludes the government from collecting a nondischargeable tax debt, there must be a "clear, explicit statement to that effect" in the plan. Miller v. United States, 363 F.3d 999, 1006 (9th Cir. 2004)(holding IRS did not waive its right to collect a nondischargeable debt where Chapter 11 plan provisions did not explicitly state its intended effect.) See also Enewally v. Washington Mutual Bank (In re Enewally), 368 F.3d 1165, 1173 (9th Cir. 2004)(confirmed plan must provide adequate notice to creditor for preclusive effect.)

Here, the plan said nothing about the total tax debt being discharged. Nothing referenced the FTB debt other than its placement in Class 5, the class for general unsecured claims. As such, nothing in the plan requires a discharge of unpaid tax debt to the FTB.

Debtor also argues that the FTB presented no evidence as to what the changes were and "whether they would have resulted in a higher tax". The parties have stipulated that the state taxes assessed were based on the changes or corrections from an IRS assessment of Debtor's 2003, 2004, and 2005 tax years and that the additional state taxes assessed were $13,850 for the 2003 tax year, $5,333 for the 2004 tax year,

and $26,139 for the 2005 tax year plus penalties and interest for each year. This argument appears to ignore not only undisputed, but also, stipulated evidence. Debtor has also never presented any argument that he disagrees with the amount of the assessments.

As Debtor has not filed or given a required equivalent report or notice as required under RTC §18622(a), his liabilities to the FTB for tax years 2003, 2004 and 2005 are not discharged under §523(a)(1)(B). The FTB's motion for summary judgment is GRANTED.

###

Date: January 23, 2020

Maureen A. Tighe
United States Bankruptcy Judge